**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | |
|---|---|
| KAREN JONES, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :   CASE NO.: 1:11-CV-148 (WLS) |
| | : |
| RAY MABUS, Secretary of the Navy, | : |
| | : |
| Defendant. | : |
| | : |

## ORDER

Presently pending before the Court is Defendant's Motion for Summary Judgment (Doc. 17). For the following reasons, Defendant's Motion for Summary Judgment (Doc. 17) is **GRANTED**.

### I. PROCEDURAL HISTORY

Plaintiff filed a Complaint in the above-captioned matter on October 25, 2011, asserting claims for a hostile work environment on the basis of race and sex in violation of Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. § 2000e *et seq.* (Doc. 1.) Plaintiff was employed with at the Marine Corps Logistics Base from March 13, 2000 to February 16, 2011. (*Id.* at 2.) Plaintiff states that her supervisor Raymond Jones (Caucasian) discriminated against her because she is African American and a woman. (*Id.*)

On January 22, 2013, Defendant moved for summary judgment on all of Plaintiff's claims. (Doc. 17.) In accordance with the Court's procedures governing notice to *pro se* plaintiffs, the Court issued an order, on January 23, 2013, directing Plaintiff to file a response in opposition to Defendant's motion. (Doc. 18.) Plaintiff was noticed

1

that she would be required to respond in opposition to Defendant's motion "with affirmative affidavits, depositions, documents[, and] rely with specificity upon evidence that is part of the record." (*Id.* at 1-2.) Plaintiff was further noticed that "[i]f a party fails or refuses to file any materials in opposition to a motion for summary judgment, a **FINAL** judgment may be rendered against that party if otherwise appropriate under the law. In that event, **there would be no trial or any further proceedings**." (*Id.* at 2.) Despite this admonition, on March 7, 2013, well after the twenty-one-day deadline set forth by the Court, Plaintiff filed a letter with the Court stating that she did not know what a motion for summary judgment "mean[s]," and requesting that the Court "give [her] the opportunity to have a trial." (Doc. 19.) On March 7, 2013, Defendant filed a Reply, stating that Plaintiff's "Response" shows that there are no triable issues of fact. (Doc. 20.)

On March 18, 2013, the Court entered another Order informing Plaintiff that her March 7, 2013 letter was not a "proper response to Defendant's Motion." (Doc. 21.) Plaintiff was given another opportunity to file a response in opposition to Defendant's Motion. (*Id.*) On March 27, 2013, Plaintiff filed another letter to the Court. (Doc. 22.) Therein, she stated that "the evidence is in [her case] showing discrimination and a Hostile Work Environment." (*Id.*) Plaintiff states that "the things that [she] was going through at work made [her] emotional [sic] distress and [she] began to suffer from depression and anxiety. [She] had to see [sic] psychologist and was put on medication." (*Id.*) Plaintiff provided no facts or record evidence. (*See id.*) On April 2, 2013, Defendant filed another Reply, wherein which it alleged that Plaintiff has failed to identify specific evidence supporting her claims of discrimination. (Doc. 23.) The

2

briefing for Defendant's Motion for Summary Judgment has concluded, and the Court finds that Defendant's Motion for Summary Judgment is ripe for review.

## II.     Summary Judgment Standard

### A.     Federal Rule of Civil Procedure 56

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue is "genuine" if the quantum and quality of proof necessary to support liability under the claim is raised.  *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997).  A fact is "material" if it hinges on the substantive law at issue and it might affect the outcome of the nonmoving party's claim.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Allen*, 121 F.3d at 646.  A judgment is appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of persuading the Court on an essential element of the claim.  *See Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 804 (1999); *Celetox*, 477 U.S. at 323.

The movant bears the initial burden of showing that there is no genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing or pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See id.* at 322-24.  Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  To avoid summary judgment, the nonmoving party must do

3

more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c).

B.      **Local Rule 56**

Local Rule 56 requires the following from a respondent to a motion for summary judgment:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate. M.D. Ga. R. 56.

Here, Defendant properly filed a summary judgment along with a statement of undisputed facts, as is required by the Federal Rules of Civil Procedure and the Local Rules of this Court. (*See* Docs. 17, 17-1.) Plaintiff did not, however, file the required responsive statement of facts. Therefore, because Plaintiff failed to properly dispute Defendant's material facts as is required by the Local Rules, all of Defendant's material facts provided in its Statement of Material Facts (Doc. 17-1) are deemed admitted by operation of Local Rule 56. Although the Court is nevertheless required to make an

independent review of the record before deciding Defendant's Motion for Summary Judgment, *see United States v. Delbridge*, No. 1:06-cv-110, 2008 WL 1869867, at *3 (M.D. Ga. Feb. 22, 2008) (WLS) (concluding that Eleventh Circuit precedent does not allow a district court to grant a summary judgment based on default), it must be noted, however, that "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

### III.  RELEVANT FACTUAL BACKGROUND

The following facts are derived from the Complaint (Doc. 1), Defendant's Answer (Doc. 10), and Defendant's Statement of Undisputed Facts (Doc. 17-1), which was submitted pursuant to Local Rule 56; and the record in this case.  Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in a light most favorable to Plaintiff as the nonmoving party.  See *Celotex Corp.*, 477 U.S. at 322-23; Fed. R. Civ. P. 56.

Plaintiff was employed at the Marine Corps Logistics Base as a Housekeeper assigned to the Housing Brach, Live Oak Lodging Section, Installation and Environment Division.  (Doc. 17-1 ¶ 1.)  The Housing Section had seven employees during Plaintiff's employment: two African American, four Caucasian, and one Asian.  (Doc. 17-6 at 47.)  Plaintiff's first-level supervisor was Ms. Shou Chung a/k/a "Mona" Evans (Asian female).  (*Id.* ¶ 3.)  Raymond Jones (Caucasian) was Plaintiff's second-level supervisor. (*Id.* ¶ 3.)  Sue Kear was Plaintiff's third-level supervisor, above Jones.  (*Id.*)  The chain of command above Kear was Herbert Smigelski followed by Frederick Boone.  (*Id.* ¶ 12.)

Plaintiff alleges that, during her employment, Jones subjected her and other employees to a hostile work environment on the basis of race and sex from November 2009 to May 2010.  (Doc. 17-1 ¶ 4.)  Specifically, Plaintiff alleges that Jones made racial and demeaning comments towards her and other employees in the presence of other staff and coworkers during the subject period.  (*Id.*)  Some of Plaintiff's complaints include alleging that: 1) Jones asked Plaintiff and coworkers how his "gals" were doing; 2) Jones stated that pieces of furniture in guest rooms were classified as defective when they were not so that they could be provided to a new employee for personal use; 3) Jones told employees that "it's Ray's way or No Way"; 4) Jones told employees that they could not talk to Kear, his superior, threatening to fire anyone who did on the spot; 5) Jones would go behind employees and mess up rooms already cleaned or tell the employee that the room was not cleaned properly; 6) Jones cursed at employees during meetings and threatened to terminate them; 7) Jones hid in closets to see what employees were discussing; 8) Jones told Plaintiff and another female coworker that he would "whip" them, making a motion with his hand and a whip noise with his mouth; and 9) Jones once stuck two fingers up on the sides of his head like horns on the devil and said my horns are up and it will not be a good day.[1]  (Doc. 17-1 ¶ 5(a)-(v); Doc. 17-2 at 36-46.)

Plaintiff complained to Kear about the "gals" comment.  (Doc. 17-1 ¶ 14.)  After receiving this Complaint, Kear counseled Jones on his use of the term "gal."  (*Id.*)  Plaintiff also complained to Kear that white employees were treated more leniently or indulgently.  (*Id.* ¶ 19.)  Kear investigated this complaint and was unable to verify any

---

[1] For the sake of brevity, the Court will not list every complaint alleged by Plaintiff, though the Court has reviewed all complaints about Jones's behavior made by Plaintiff.

6

preferential treatment. (*Id.*) Plaintiff also complained to Kear about the whipping gesture and noise. (*Id.* ¶ 20.) Kear took this complaint to Smigelski, who gave Jones a verbal warning about the whipping gesture. (*Id.* ¶ 22.) After the warning, Jones apologized to Plaintiff for the whipping gesture. (*Id.* ¶ 23.) Plaintiff told Smigelski she was satisfied with this apology. (*Id.*)

Smigelski also held a meeting with all of the employees without supervisors present. (*Id.* ¶ 20.) At the meeting, Smigelski "received no indication that there was a racially or sexually discriminatory component to their complaints." (*Id.*) "Rather, [Smigelski] perceived the complaints were related to work." (*Id.*) In response to complaints about Jones from Evans and another female employee about Jones, Smigelski asked command to conduct an investigation around April 2010. (*Id.* ¶ 21.) The investigation concluded that "Ray Jones was guilty of using inappropriate language and behavior but found that to be a factor of poor judgment and lack of proper management skills rather than malice or any discriminatory intent." (*Id.* ¶ 31.) As a result of the investigation, Jones was terminated effective October 18, 2010 for a) using insulting, abusive, or obscene language to or about other employees, b) engaging in threatening and intimidating behavior towards subordinate employees, and c) attempting to coerce a subordinate to give a false statement. (*Id.* ¶ 33.) Jones chose to resign to avoid termination on October 15, 2010. (*Id.* ¶ 34.)

Plaintiff filed a formal discrimination complaint on May 11, 2010, with the Department of Defense. (*Id.* ¶ 7.) The Agency issued its final decision on April 11, 2011, determining that Plaintiff was not discriminated against as alleged. (Doc. 17-6 at 42-53.) As part of her complaint, Plaintiff had alleged that Jones's tone was harsh, he had a nasty attitude, and he curses, in addition to alleging other coarse behavior by Jones. (*Id.*

7

at 49.) After reviewing the evidence, the Agency found that Plaintiff's complaints about Jones related to his "management style." (*Id.* at 51.) The Agency pointed out that "Title VII does not protect an employee against adverse treatment due simply to a supervisor's quirks or autocratic attitude." (*Id.*) The Agency further stated that "Title VII is not designed to ensure that employees receive only fair and objective treatment from their supervisors. Title VII is intended only to prohibit discrimination for specified reasons." (*Id.*) Per the Agency, where the facts show that the supervisor "mistreated everyone equally" with "his inappropriate language and yelling," a Plaintiff's claim for sexual or racial harassment fails. (*Id.*) The Agency also concluded that, in response to the allegations of harassment and a hostile work environment, management conducted an investigation into Plaintiff's allegations, counseled Jones, and removed his from his supervisory position. (*Id.* at 52.) Finally, the Agency concluded that "there is no evidence that [Jones] made any reference to [Plaintiff] or any particular protected group." (*Id.*) Thus, the Agency concluded that Plaintiff's "claims do not rise to the level of harassment based on race or sex." (*Id.*)

On appeal, the Equal Employment Opportunity Commission ("EEOC") found that "the incidents described in the complaint were not so severe or pervasive as to alter the terms and conditions of Complainant's employment. We find the evidence does not establish that Complainant was subjected to harassment based on her race or sex." (Doc. 17-7 at 7-11, 9.) The EEOC also found that the record reflects that while Jones's "communication was unprofessional and unduly harsh, [his] comments were [not] motivated by Complainant's race or sex, nor was his poor treatment confined to members of Complainant's protected groups." (*Id.* at 9.) On October 25, 2011, Plaintiff filed the instant Complaint. (Doc. 1.)

8

## IV. **DISCUSSION**

"A hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). Title VII is not meant to serve as "a general civility code." *Satchel v. Sch. Bd. of Hillsborough Cnty.*, 251 F. App'x 626, 630 (11th Cir. 2007) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). As such, to prove a prima facie case of hostile working environment, a plaintiff must establish that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon a protected characteristic (here, race and sex); (4) the harassment was sufficiently severe or pervasive to alter the terms or conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for said environment under either a theory of direct or vicarious liability. *Miller*, 277 F.3d at 1275.

Defendant has moved for summary judgment on the basis that the record is devoid of any evidence that "Jones said anything to evince a hostile or prejudicial attitude toward any protected group or sex," and even if a few of Jones's comments could be considered race- or sex-based harassment, these comments were not sufficiently severe or pervasive to be actionable under Title VII. (Doc. 17-8 at 7, 14.) Defendant states in plain terms that the only conclusion to be drawn from Plaintiff's complaint is that "Ray Jones was a boorish moron in his handling of his employees (which cost him his job . . .) but he was a boorish moron without reference to the race or

9

sex of the employees and his conduct fell well short of creating a hostile environment." (*Id.* at 6.)

At the risk of insulting someone the Court has never met, the Court concludes that it agrees with Defendant's assessment of the evidence. While the record demonstrates ample evidence of impolite, rude, and insensitive behavior on the part of Jones, the evidence does not reflect that there were any racial or sexual components to Jones's particular brand of "management." The facts reflect that Jones treated *all* employees in an intolerable manner, behavior that ultimately led to his discharge. Thus, aside from her unsupported assertion that she was discriminated against based on race and sex, Plaintiff has failed to present evidence showing that Jones's conduct constituted harassment motivated by her race or sex.

Even if, arguably, a few of Jones's isolated comments could be considered race- or sex-related, none of the conduct identified by Plaintiff constitutes harassment sufficiently severe or pervasive to alter the terms or conditions of her employment. Importantly, the fourth element of a hostile work environment claim contains both an objective and a subjective component. *Miller*, 277 F.3d at 1276. Thus, for harassing conduct to be actionable under the "sufficiently severe or pervasive" prong, the "behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim 'subjectively perceives to be abusive." *Id.* (internal quotations and alterations omitted). When evaluating the objective severity of the harassment under the fourth prong, the Court considers: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the

conduct unreasonably interferes with the employee's job performance. *Id.* (citations omitted).

The record reflects that Plaintiff was only referred to as a "gal" once, and, similarly, the "whip" incident only took place once.[2] As such, these comments fall very short of being "frequent," or sufficiently severe or pervasive, see *infra* n.2. As to all other allegedly offending behavior, the Court finds it to be race- and gender-neutral, albeit boorish. It is well established that "rude, insulting, and insensitive" conduct that "fall[s] more in the category of epithets or boorish behavior . . . [is] not actionable under Title VII." *MackMuhammad v. Cagle's Inc.*, 379 F. App'x 801, 805 (11th Cir. 2010). Additionally, "Title VII . . . does not operate as a general ban on yelling, swearing, screaming and other rude or offensive behavior." *Mosley-Coleman v. Potter*, No. CV 309-033, 2009 WL 1811552, at *3 (S.D. Ga. June 24, 2009).

Therefore, after construing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to establish the third or fourth elements of a *prima facie* claim of hostile work environment—that she was subject to harassment that was based upon her race or sex and that there was race- or sex-based harassment sufficiently severe or pervasive to alter the terms and conditions of her employment. Accordingly, Defendant has demonstrated its entitlement to summary judgment as to Plaintiff's Complaint.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 17) is **GRANTED**. It is hereby **ORDERED AND ADJUDGED** that Plaintiff shall taking

---

[2] These are the only two comments that the Court finds even arguably implicate race or sex. The Court concludes, however, that although these comments were offensive to Plaintiff, they were neither severe nor would they be considered particularly offensive to a reasonable person under the circumstances in which they were uttered.

11

nothing by her Complaint (Doc. 1), and **JUDGMENT** shall be entered in favor of Defendant.

    **SO ORDERED**, this  29th  day of August, 2013.

                                              /s/ W. Louis Sands
                                              **THE HONORABLE W. LOUIS SANDS,**
                                              **UNITED STATES DISTRICT COURT**